**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JASON KOENIG,<br>        Plaintiff,<br><br>        v.<br><br>CITY OF NEW HAVEN,<br>        Defendant. | CIVIL ACTION NO.<br>3:13-CV-1870 (JCH)<br><br><br>NOVEMBER 10, 2016 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 77)**

I.      **INTRODUCTION**

      The plaintiff, Sgt. Jason Koenig ("Koenig"), has brought this action against the

defendant, the City of New Haven ("the City"), alleging disability discrimination in

violation of the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of

1973, and the Connecticut Fair Employment Practices Act ("CFEPA").  See Fourth

Amended Complaint (Doc. No. 59) ("Fourth Am. Compl.") at 1.  The City has moved for

summary judgment, arguing that Koenig cannot show an adverse employment action

due to his alleged disability.

      For the reasons that follow, the City's Motion for Summary Judgment ("Mot. for

Sum. J.") (Doc. No. 77) is **GRANTED**.

## II.    FACTUAL BACKGROUND[1]

Koenig works for the City's Department of Police Service.  See Defendant's Memorandum ("Def.'s Mem.") (Doc. No. 77-1) at 2; Fourth Amended Complaint ("Fourth Am. Comp.") (Doc. No. 59) at 1.  Koenig has previously claimed that he suffered several injuries in the line of duty, including a head-on automobile collision, which caused him to require medical treatment.  See November 2012 Connecticut Commission on Human Rights and Opportunities ("CHRO") Affidavit of Illegal Discriminatory Practice ("2012 Koenig CHRO Aff.") (Doc. No. 63-2) ¶¶ 7–10.

Koenig has previously claimed that, upon returning from medical leave in May 2012, he learned that his supervisors were going to intentionally create situations to set him up to receive discipline.  According to Koenig, on May 25, 2012, the City gave Koenig an Independent Medical Examination.  Koenig has previously claimed that, on

---

[1] The City has filed a Local Rule 56(a)(1) Statement listing each material fact as to which the City contends there is no genuine issue to be tried, and citing to evidence.  See Defendant's Local Rule 56(a)(1) Statement (Doc. No. 78).  Koenig has filed a Local Rule 56(a)(2) Statement denying each of the City's statements.  See Plaintiff's Local Rule 56(a)(2) Statement ("Pl.'s 56(a)(2)") (Doc. No. 82-2) at 1.  However, each denial was required to "be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  See District of Connecticut Local Rules of Civil Procedure 56(a)(3).  Most of Koenig's denials cite "Aff. of Koenig."  See Pl.'s 56(a)(2) at 1.  The best the court can surmise is that "Aff of Koenig" refers to the transcript of an interview with Koenig, attached to the City's Motion.  See Koenig Interview Transcript ("Koenig Tr.") (in Doc. No. 77-8 at 3–11).  The court surmises this because Koenig's Memorandum cites "Affidavit of Koenig" for the quote beginning, "I heard rumors that Assistant Chief . . . ," see Plaintiff's Memorandum ("Pl.'s Mem.") (Doc. No. 82-1) at 14, which is a quote from the interview transcript, see Koenig Tr. at 6; and because the only items on the record in this case that are labeled as affidavits of Koenig do not address the topics discussed in the Defendant's 56(a)(1) statement.  See November 2012 Connecticut Commission on Human Rights and Opportunities ("CHRO") Affidavit of Illegal Discriminatory Practice (Doc. No. 63-2); February 2015 CHRO Affidavit of Illegal Discriminatory Practice (Doc. No. 63-3).  It is not clear that the court should consider the citation to an interview, given that the interview may be inadmissible hearsay if offered by Koenig.  For the purposes of this Ruling, the court will nonetheless consider the Koenig Transcript as evidence that could raise a material issue of fact.  However, Rule 56(a)'s "'specific citation' obligation [ ] requires counsel [ ] to cite to specific paragraphs when citing affidavits [ ] and to cite to specific pages when citing [ ] to documents longer than a single page in length."  See Local Rule 56(a)(3).  The denials here lack citations to paragraphs or pages.  See Pl.'s 56(a)(2) at 1.

If Koenig's counsel fails to comply with Local Rule 56(a) again, this court will sanction him and treat the non-complying 56(a)(2) Statement as creating no issue of material fact.  Counsel is ordered to docket his certification that he has read Local Rule 56 by November 22, 2016.

June 18, 2012, New Haven Police Chief Dean Esserman ("Esserman") held a "counseling session" for Koenig, which was a form of discipline.  Koenig claimed that, in front of several Deputy Chiefs and ranking officers, Esserman said that Koenig had "the worst record" that Esserman had ever seen and commented on Koenig's confidential health information.  Koenig claimed that he had not done anything wrong to deserve this disciplinary session, other than being disabled.  In approximately November 2012, Koenig submitted a disability discrimination and retaliation complaint to the CHRO, based on the above-mentioned events.  See id.

The City later carried out an internal investigation regarding Koenig.  See Defendant's Local Rule 56(a)(1) Statement ("Def.'s 56(a)(1)") (Doc. No. 78) ¶ 1; Fourth Am. Compl. at 8.  The City asserts that the investigation was into a comment of a sexual and racial nature that Koenig allegedly made on June 20, 2013.  See Def.'s 56(a)(1) ¶¶ 1, 4.  The City supports this assertion with a copy of the Investigation Report describing an alleged comment of a sexual and racial nature and containing summaries of interviews about the alleged comment.  See Investigation Report ("Investigation Rep.") (in Doc. No. 77-3 at 5–9).  Koenig denies the City's assertion, citing the City's transcript of its interview with him.  See Pl.'s 56(a)(2) ¶¶ 1, 4.  There is nothing in this interview transcript, however, from which a reasonable juror could conclude that the investigation was into anything other than a comment of a sexual and racial nature that Koenig allegedly made on June 20, 2013.  In fact, the very interview transcript that Koenig cites includes a quote attributed to Detective Wilfredo Cruz ("Cruz") stating that Koenig was "here today to answer questions . . . regarding an insensitive comment [he] made [ ] on about June 20th during the morning hours while [he was] working [at] the front desk [ ]

3

as a sergeant." <u>See</u> Koenig Interview Transcript ("Koenig Tr.") (in Doc. No. 77-8 at 3– 11) at 6.  Further, in the same interview transcript there is a quote attributed to Koenig stating an allegation Koenig has heard against himself concerning a comment of a sexual and racial nature.  <u>See</u> <u>id.</u> at 8.  The City asserts that, based on the investigation, Koenig was found to have violated police department rules.  <u>See</u> Def.'s 56(a)(1) ¶ 1. The City supports this assertion with the Investigation Report, which repeats the language of two police department rules and states that Koenig was found to have violated the rules.  <u>See</u> Investigation Rep. at 9.  Koenig denies the City's assertion, citing the City's transcript of its interview with him.  <u>See</u> Pl.'s 56(a)(2) ¶¶ 1.  There is nothing in the interview transcript, however, from which a reasonable juror could conclude that the City did <u>not</u> find Koenig to have violated police department rules.  <u>See</u> Koenig Tr.

In September 2013, Koenig took and passed an examination for eligibility to become a lieutenant.  <u>See</u> February 2015 CHRO Affidavit of Illegal Discriminatory Practice ("2015 Koenig CHRO Aff.") (Doc. No. 63-3) ¶ 16.  Koenig did not receive a promotion to Lieutenant, however.  <u>See</u> <u>id.</u> ¶ 23.  Koenig has claimed that he was ranked eighteen out of the officers who passed the examination.  <u>See</u> <u>id.</u> ¶ 16.  Koenig claimed that the City initially interviewed candidates ranked one through seventeen, stopping right before Koenig.  <u>See</u> <u>id.</u> ¶ 17.  Koenig claimed that the City then promoted candidates one through twelve.  <u>See</u> <u>id.</u> ¶ 18.  Koenig claimed that, on a second round of interviews, the City again stopped interviewing at candidate number seventeen, right before Koenig.  <u>See</u> <u>id.</u> ¶ 20.

4

The City initially suspended Koenig for at least two weeks in April 2014.[2]  See Def.'s Mem. at 3; Fourth Am. Compl. at 9.

On December 5, 2014, Koenig was the sixth remaining candidate on the ranked list of officers who had passed the lieutenant's examination but had not yet been promoted.  See 2015 Koenig CHRO Aff. ¶ 21.  The City had six open positions at this time, but chose to fill only four of its remaining positions.  See id. ¶ 23.  Koenig thus did not receive a promotion.  See id. ¶ 23.

Koenig filed a grievance based on his suspension.  See Def.'s Mem. at 3; Fourth Am. Compl. at 9.  The City asserts that Koenig's suspension was ultimately reduced to five days.  See Def.'s 56(a)(1) ¶ 7.  The City supports this assertion with a copy of a settlement agreement stating that Koenig's suspension was reduced to five days.  See Settlement Agreement (in Doc. No. 77-2 at 3).  Koenig denies the assertion, citing the City's transcript of its interview with him.  See Pl.'s 56(a)(2) ¶¶ 7.  However, there is nothing in the interview transcript—which is dated about two years before the settlement agreement—from which a reasonable juror could conclude that Koenig's suspension was not reduced to five days.  See Koenig Tr.

In approximately February 2015, Koenig submitted a second disability discrimination and retaliation complaint to the CHRO, this one discussing the City's failure to promote him.  See 2015 Koenig CHRO Aff.[3]

---

[2] Koenig states that the City suspended him for two weeks.  See Fourth Am. Compl. at 9.  The City says that it suspended him for fifteen days.  See Def.'s Mem. at 3.

[3] Koenig has recently initiated a second disability discrimination and retaliation action in this court against the City of New Haven.  See Complaint, Koenig v. New Haven, No. 16-cv-514 (D. Conn. Mar. 30, 2014) at 1–2.  The second federal action focuses on failure to promote.  See id. at 9.

### III.    STANDARD OF REVIEW

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in its favor, see Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., No. 15-782, 2016 WL 6575071, at *3 (2d Cir. Nov. 7, 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Anderson, 477 U.S. at 255; Wright, 831 F.3d at 71–72.  "Where it is clear that no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment should be granted."  Sahu v. Union Carbide Corp., 650 F. App'x 53, 56 (2d Cir. 2016) (quoting F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010)) (internal quotation marks omitted).  On the other hand, where "reasonable minds could differ as to the import of the evidence in the record," the question must be left to the finder of fact.  Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (internal quotation marks and ellipses omitted).

6

**IV.    DISCUSSION**

A.              Koenig's Claims

Counts One and Two allege ADA violations, which the court construes as a claim

for discrimination and for retaliation.[4]  See Fourth Am. Compl. at 10.  With regard to

discrimination, the ADA states that, "[n]o covered entity shall discriminate against a

qualified individual on the basis of disability in regard to . . . employee compensation . . .

and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To

state a prima facie case of ADA discrimination, Koenig must present evidence from

which a reasonable jury could find that "(1) his employer is subject to the ADA; (2) he

was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform

the essential functions of his job, with or without reasonable accommodation; and (4) he

suffered adverse employment action because of his disability."  Forrester v. Prison

Health Servs., Inc., 651 F. App'x 27, 28 (2d Cir. 2016) (internal quotation marks

omitted); McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013) (internal

quotation marks omitted).  ADA disability discrimination claims are subject to the

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805 (1973) burden-shifting analysis.

See Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 136 (2d Cir. 2016);

McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009).  Once a

plaintiff has established a prima facie case, the employer "must offer through the

introduction of admissible evidence a legitimate non-discriminatory reason for the

[adverse action]; and the plaintiff must then produce evidence and carry the burden of

---

[4] Count Two specifically alleges disability discrimination.  See Fourth Am. Compl. at 10.  Count One does not specify what type of ADA claim it is.  See Fourth Am. Compl. at 10.  Because in response to the Motion for Summary Judgment, Koenig discusses ADA retaliation, see, e.g., Pl.'s Mem. at 10, the court will construe Count One as an ADA retaliation claim.

7

persuasion that the proffered reason is a pretext."  Id. at 96 (internal quotation marks omitted).

With regard to retaliation, the ADA states that, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA.  42 U.S.C. § 12203(a).  To state a prima facie case of ADA retaliation, Koenig "must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Pediford–Aziz v. City of N.Y., 170 F. Supp. 3d 480, 485 (E.D.N.Y. 2016). "The McDonnell Douglas burden shifting analysis also applies to retaliation claims brought pursuant to the ADA."  Rios v. Dep't of Educ., 351 F. App'x 503, 505 (2d Cir. 2009) (citing Treglia, 313 F.3d at 719).

Count Three alleges that the City discriminated against Koenig in violation of the Rehabilitation Act.  See Fourth Am. Compl. at 11.  The Rehabilitation Act states that, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  "To establish a prima facie case of employment discrimination under the Rehabilitation Act, a plaintiff must prove that: (1) he is an 'individual with a disability,' (2) he was 'otherwise qualified' for [his] position, (3) he [suffered an adverse employment action] on the basis of his disability, and (4) the employer receives federal funds."  D'Amico v. City of New York, 132 F.3d 145, 150 (2d Cir. 1998); see also Gardner v. Univ. of Connecticut Health Ctr., No. 3:12-CV-01168-

GWC, 2016 WL 4582039, at *3 (D. Conn. Sept. 1, 2016).  The McDonnell Douglas burden shifting analysis applies to Rehabilitation Act employment discrimination claims where the employer maintains that its actions were unrelated to disability.  See Teahan v. Metro-North Commuter R. Co., 951 F.2d 511, 514 (2d Cir. 1991).  "Unless one of [the] subtle distinctions" that exist between the ADA and the Rehabilitation Act "is pertinent to a particular case, we treat claims under the two statutes identically." Henrietta D v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

Koenig also claims, in Count Four, that the City violated CFEPA.  See Fourth Am. Compl. at 12.  CFEPA states that, "[i]t shall be a discriminatory practice in violation of this section[ f]or an employer . . . to discriminate against [any] individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . physical disability."  Conn. Gen. Stat. § 46a-60(a)(1).  To state a prima facie case of CFEPA disability discrimination, Koenig must show that "(1) he suffers from a disability or handicap . . . ; (2) he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and that (3) the defendant took an adverse employment action against him because of, in whole or in part, his protected disability."  Curry v. Allan S. Goodman, Inc., 286 Conn. 390, 426 (2008) (brackets and internal quotation marks omitted).  The McDonnell Douglas burden shifting analysis applies to CFEPA discrimination claims.  See Dep't of Transp. v. Comm'n on Human Rights & Opportunities, 272 Conn. 457, 464 n.9 (2005).

The City supports its Motion for Summary Judgment with the argument that any adverse employment action against Koenig was unrelated to disability.  See Def.'s Mem. at 3.  The City's argument can be construed as either (1) that Koenig thus cannot

establish a prima facie case for any of his claims, or (2) that Koenig thus cannot rebut the City's nondiscriminatory rationale with evidence of pretext.  See, e.g. id. at 11 (stating that "there is no adverse employment action that is related to the claim of disability" because there is no evidence that the City acted "in a pre-textual manner").  To state a prima facie case for any of his claims, Koenig must come forward with evidence from which a reasonable jury could find an adverse employment action due to disability or protected activity.  See McMillan, 711 F.3d at 125; Treglia, 313 at 719; Gentile v. Potter, 509 F. Supp. 2d 221, 235 (E.D.N.Y. 2007); Curry, 286 Conn. at 426. To survive a motion for summary judgment on any of his claims once the City has offered evidence of a nondiscriminatory rational, Koenig must offer evidence of pretext. See McBride, 583 F.3d at 96; Treglia, 313 F.3d at 719; Teahan, 951 F.2d at 514; Dep't of Transp., 272 Conn. at 464 n.9.  Here, although Koenig has put forth evidence of an adverse employment action, the City is entitled to summary judgment because the City has put forth evidence of a nondiscriminatory rationale and Koenig has failed to come forward with evidence from which a reasonable jury could find pretext.  Koenig's claims thus cannot survive a motion for summary judgment, even though, for purposes of this Motion, the court treats as admitted all other prima facie case elements for each of Koenig's claims, aside from adverse employment action.[5]  Because courts follow the same burden-shifting analysis for the ADA, the Rehabilitation Act, and CFEPA; and because the City's argument pertains equally to all Koenig's claims, the court analyzes all four claims together.

---

[5] The parties decline to address all prima facie case elements in the summary judgment briefing. Rather, the parties focus solely on whether the City took adverse action against Koenig due to discrimination or retaliation.

B.              Adverse Employment Action

As this court has previously explained:

> Each of the causes of action that Koenig brings requires that
> a plaintiff have suffered an injury known as an "adverse
> employment action."  This term has a meaning that does not
> conform precisely to how this term might be understood in
> everyday language.   An adverse employment action is "a
> materially adverse change in the terms and conditions of
> employment."   Adams v. Festival Fun Parks, LLC, 560 F.
> App'x 47, 49 (2d Cir. 2014) (ADA discrimination context)
> (quotation marks omitted).  To be legally cognizable, such an
> action must be "more disruptive than a mere inconvenience or
> an alteration of job responsibilities." Galabya v. New York City
> Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (ADEA
> context); see also Baum v. Rockland Cnty., 161 F. App'x 62,
> 64 (2d Cir. 2005) (applying same analysis to ADA and ADEA
> claims).  Examples of such adverse actions are: "termination
> of employment, a demotion evidenced by a decrease in wage
> or salary, a less distinguished title, a material loss of benefits,
> [and] significantly diminished material responsibilities . . . ."
> Adams, 560 F. App'x at 49 (quotation marks omitted).   "It
> hardly needs saying that a criticism of an employee (which is
> part of training and necessary to allow employees to develop,
> improve and avoid discipline) is not an adverse employment
> action." Weeks v. N.Y. State Div. of Parole, 273 F.3d 76, 86
> (2d Cir. 2001), abrogated on other grounds by Nat'l R.R.
> Passenger Corp. v. Morgan, 536 U.S. 101 (2002).   The
> meaning of "adverse employment action" is uniform across
> the frameworks of the ADA, the Rehabilitation Act, and the
> CFEPA.   See Jackson v. Water Pollution Control Authority of
> City of Bridgeport, 278 Conn. 692, 705 n.11 (2006) (CFEPA
> and federal discrimination law); see also Adams, 560 F. App'x
> at 49 (CFEPA and ADA); Doe v. Bd. of Educ. Of Fallsburgh
> Cent. Sch. Dist., 63 F. App'x 46, 48 (2d Cir. 2003)
> (Rehabilitation Act and ADA).

February 27, 2015 Ruling ("Feb. 2015 Ruling") (Doc. No. 42) at 4–5.  Koenig argues

that his two-week suspension without pay constituted an adverse employment action.

Plaintiff's Memorandum ("Pl.'s Mem.") (Doc. No. 82-1) at 1.  The court agrees, as a

matter of law.  There is no dispute about the fact that the City suspended Koenig.[6]  <u>See</u>
Def.'s Mem. at 3; Fourth Am. Compl. at 9.  The Second Circuit has held that even a
one-week suspension constitutes adverse employment action, even where the
employee later receives full back pay.  <u>See</u> <u>Lovejoy–Wilson v. NOCO Motor Fuel, Inc.</u>,
263 F.3d 208, 224 (2d Cir. 2001).  Here, the parties agree that Koenig's initial
suspension was at least two weeks, <u>see</u> Def.'s Mem. at 3; Fourth Am. Compl. at 9, and
the evidence put forth by the City to show that Koenig received back pay, if believed,
could only support a finding that Koenig received <u>partial</u> back pay, <u>see</u> Settlement
Agreement.  Thus, a reasonable jury could conclude that Koenig suffered an adverse
employment action.

      C.            <u>Non-Discriminatory Rationale</u>

      The City has met its burden to "offer through the introduction of admissible
evidence a legitimate non-discriminatory reason for" investigating and suspending
Koenig.  <u>See</u> <u>McBride</u>, 583 F.3d at 96 (internal quotation marks omitted).  The City has
produced an Affidavit and an Investigation Report stating that the City investigated
Koenig because of a comment that Koenig allegedly made on June 20, 2013.  <u>See</u>
Investigation Rep. at 6; Chief Dean Esserman's Affidavit ("Esserman's Aff.") (in Doc.
No. 77-3 at 1–2)  ¶¶ 3–4.  The alleged comment included both a mention of race and a
mention of a sexual act.  <u>See</u> Investigation Rep. at 6.  The City has produced interview
transcripts from its internal investigation, which the City could use to demonstrate that

---

[6] Nor is there any <u>real</u> dispute about whether the suspension constituted an adverse employment
action.  Koenig refers to the adverse employment action as "conceded."  <u>See</u> Pl.'s Mem. at 1.  The City
has explicitly stated, however, that Koenig cannot show an adverse employment action.  <u>See</u> Mot. for
Summ. J. at 1.  That said, the City has referred to suspension as "the only adverse employment action
alleged under the law of this case," and the City fails to advance any argument that the suspension was
not adverse employment action.  <u>See</u> Def.'s Mem. at 10–11.

the internal investigation's finding that Sgt. Koenig made this comment was supported

by the investigation itself.  See Karizma Schloss Interview Transcript ("Schloss Tr.") (in

Doc. No. 77-7 at 4–11) at 7, 9; Wolcheski Interview Transcript ("Wolcheski Tr.") (in Doc.

No. 77-6 at 5–15) at 9.  The interviewees have sworn to the accuracy of the above-cited

transcripts.  See Karizma Schloss's Affidavit (in Doc. No. 77-7 at 1–2) ¶ 6; Sgt. John

Wolcheski's Affidavit (in Doc. No. 77-6 at 1–2) ¶ 6.  The Investigation Report contains

information which the City could use to prove that Esserman believed that Koenig in fact

made the alleged comment, and that the comment violated police department rules

against (1) harassment or discrimination and (2) conduct unbecoming an officer.  See

Investigation Rep. at 7–9.  The City has produced the relevant rules.  See General

Orders (in Doc. No. 77-3 at 10–13) § 328.3; Rule Fifteen (in Doc. No. 77-3 at 14–15)

Art. 38.  The City has produced an Affidavit and a Personnel Memorandum stating that

the City suspended Koenig based on the findings of the internal investigation.  See

Esserman's Aff. ¶¶ 3, 7; Personnel Mem. at 3.  The City has also produced affidavits

stating that Koenig's injury played no role in the decision to suspend him, see

Esserman's Aff. ¶ 8, and that Koenig did not produce any evidence during his grievance

process showing that he was suspended due to disability, see Scott Nabel's Affidavit

("Nabel's Aff.") (in Doc. No. 77-2 at 1–2)  ¶ 7. This is sufficient to state a non-

discriminatory reason.

      D.        Pretext

      Because the City has produced evidence of a non-discriminatory rationale, the

City "will be entitled to summary judgment unless [Koenig] can point to evidence that

reasonably supports a finding of prohibited discrimination," indicating that the City's

rationale may be pretext.  See Mario v. P & C Food Markets, Inc., 313 F.3d 758, 767

(2d Cir. 2002) (internal quotation marks and ellipsis omitted).  "In short, [the employee]

must be given a full and fair opportunity to demonstrate by competent evidence that the

presumptively valid reasons for his [adverse employment action] were in fact a coverup

for a [ ] discriminatory decision."  McDonnell Douglas, 411 U.S. at 805.  The record

before the court is devoid of evidence from which a reasonable juror could find pretext.

Evidence of pretext may include (1) evidence that employees outside the

protected class, who engaged in acts "of comparable seriousness to" the plaintiff's

"were nevertheless" not subjected to the adverse employment action; (2) "facts as to

the" employer's previous treatment of the employee; (3) the employer's "reaction, if any,

to" the employee's "legitimate civil rights activities; and" (4) the employer's "general

policy and practice with respect to minority employment," which may be evidenced by

statistics showing that "this case conformed to a general pattern of discrimination."  Id.

at 804–05.  Evidence of pretext may also include (5) "temporal proximity" and (6) "other

evidence such as inconsistent employer explanations."  Zann Kwan v. Andalex Group

LLC, 737 F.3d 834, 847 (2d Cir. 2013); see also Giscombe v. New York City Dep't of

Educ., 39 F. Supp. 3d 396, 403–04 (S.D.N.Y. 2014) ("A plaintiff may show pretext by

illuminating such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered reasons that would raise doubt in the

factfinder's mind that the employer did not act for those reasons.") (internal quotation

marks omitted).

1.      Previous Treatment

With regard to the City's previous treatment of Koenig, Koenig argues that the

City's

> [(1)] intent to "hammer" the plaintiff; [(2)] its sandbagging him with a disciplinary meeting; [(3)] the statements made to the plaintiff about his physical condition and health related attendance records by the Chief of the defendants[, including] stating that the plaintiff has the worst attendance record he had ever seen; [(4)] subjecting the plaintiff to an [Independent Medical Examination, or] IME, and then [(5)] restricting him to light duty after the defendant's own IME demonstrated that the plaintiff is able to work full duty all serve to demonstrate the retaliatory and discriminatory animus of the defendant.

See Pl.'s Mem. at 15–16.  The court will discuss each aspect of the City's alleged previous treatment of Koenig in turn.

By "hammer," Koenig apparently means that the City planned to set up situations to allow the City to discipline him.  See, e.g., Fourth Am. Compl. at 5 (defining "hammer").  The only evidence in the record that the City planned to "hammer" Koenig, however, is Koenig's statement in a CHRO document that Koenig had "learned that" the City was planning to hammer him.  See 2012 Koenig CHRO Aff. ¶ 12.  Koenig's "hammer" statement cannot establish pretext because the CHRO document does not explain how Koenig learned that the City was planning to hammer him.  The court thus lacks any basis to believe that Koenig's "hammer" statement would be admissible.  If Koenig learned this information from someone else, then the "hammer" statement may be inadmissible hearsay.[7]  See Fed. R. Evid. 802.  Alternatively, the statement may be inadmissible conjecture lacking any rational basis in Koenig's perception.  See Fed. R. Evid. 701(a).  To successfully oppose a summary judgment motion, an affidavit "must

---

[7] If Koenig learned this information from a coworker, a hearsay exception could potentially apply, depending on whether the coworker conveyed the information within the scope of employment.  See Fed. R. Evid. 801(d)(2)(D).  Koenig has not come forward with evidence to support the application of such an exception, however.

be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence."  Fed. R. Civ. P. 56(c)(4); Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004).

The sole evidence that the City may have held the counseling session due to Koenig's disability is a document submitted to the CHRO by Koenig, in which Koenig claimed that the only thing he had "done wrong" to deserve the session was being disabled.  See 2012 Koenig CHRO Aff. ¶ 27.  Koenig does not explain how he knows that the City believed he had done something wrong by being disabled.  See id. ¶ 27. Further, this is his view: it is not evidence of the basis for the City's action.  Thus, there is no basis upon which a reasonably jury could conclude that the "done wrong" statement would be admissible to show the City's intent in holding the counseling session.

The only evidence regarding Esserman's disability-related statements is Koenig's statement in the CHRO document that, "[r]eferring to my disability, medical conditions and line of duty injuries, Esserman stated that I 'have the worst record' that he had ever seen in twenty years.  Esserman further inappropriately commented on my sensitive, confidential protected health information."  See id. ¶ 23.

First, Koenig's "worst record" statement is insufficient to establish a genuine dispute of material fact as to whether Esserman expressed any disability-based bias because, taken in the light most favorable to Koenig, the "worst record" statement could not lead a reasonable jury to find that Esserman had expressed bias.  The "worst record" statement lacks sufficient details to show how Koenig knew that Esserman was referring to Koenig's "disability, medical conditions and line of duty injuries."  There is

16

nothing in the record to indicate, or support an inference, that the "worst record" comment referred to disability.

Second, Koenig's "inappropriately commented" statement is similarly insufficient to show bias, because the statement fails to describe Esserman's allegedly inappropriate comment, stating only that the comment was "on [Koenig's] sensitive, confidential protected health information." Koenig's complaint to the CHRO thus reveals only that Koenig felt Esserman's comment was inappropriate. A reasonable jury would have no basis upon which to infer, as Koenig suggests, that Esserman's comment (1) in fact involved Koenig's sensitive, confidential protected health information, and (2) was inappropriate.

The Fourth Amended Complaint elaborates that Esserman falsely-accused Koenig of abusing steroids, see Fourth Am. Compl. at 7, but the CHRO document lacks any mention of steroids, see 2012 Koenig CHRO Aff. ¶ 23. There is thus no evidence in the record before the court of Esserman accusing Koenig of steroid abuse.

Koenig has previously claimed that the City "subjected" him to an Independent Medical Examination. See id. ¶ 16. This court has previously ruled that Koenig's medical examination did not constitute an adverse employment action. See Feb. 2015 Motion to Dismiss Ruling at 6–7. Koenig's medical examination, without more, is also insufficient for a reasonable jury to find pretext. Koenig has not provided any evidence from which a reasonable jury could find that he was given the examination out of animus. The ADA explicitly allows employers to give medical examinations if "job-related and consistent with business necessity." 42 U.S.C. §12112 (d)(4)(A). Koenig has not come forward with evidence that the medical examination was other than job-

related.  While an action could provide evidence of pretext without itself violating the ADA, an action so unobjectionable as to be explicitly-permitted by the ADA presumably is not, without more, evidence from which a reasonable jury could find pretext.

A court in this Circuit has declined to treat even an <u>unnecessary</u> medical examination as evidence of pretext, where the plaintiff failed to put forth evidence that the unnecessary examination was "invidious discrimination."  <u>See Hailey v. New York City Transit Auth.</u>, No. 02 CV 3127 (JG), 2003 WL 22670891, at *6 (E.D.N.Y. Oct. 20, 2003), <u>aff'd</u>, 136 F. App'x 406 (2d Cir. 2005).  Another court in this Circuit has, on the other hand, treated an employer's ordering of <u>multiple</u> medical examinations in a short period of time as potential evidence of pretext, where circumstances indicated that the employer may have inappropriately influenced the doctor's medical opinion.  <u>See Querry v. Messar</u>, 14 F. Supp. 2d 437, 449 (S.D.N.Y. 1998).  Koenig, however, has offered evidence of only a single medical examination and no evidence of inappropriate influence.

Koenig argues that the City's "restricting him to light duty after the defendant's own IME demonstrated that the plaintiff is able to work full duty" evidences pretext.  <u>See</u> Pl.'s Mem. at 15–16.  There is no evidence in the record, however, from which a reasonable jury could find that the medical examination cleared Koenig for full duty.  To the contrary, Koenig claimed in a CHRO document that the physician said, "it would be 'foolish' to put" Koenig "back on full duty," although Koenig's medical examination report did "not state to a reasonable medical certainty" that Koenig could not "return to full duty."  <u>See</u> 2012 Koenig CHRO Aff. ¶¶ 17–18.  Koenig's own statement to the CHRO, if believed, could support only a conclusion that the City followed medical advice by

18

restricting Koenig to light duty.  Therefore, a reasonable jury could not find pretext from the City's restricting of Koenig to light duty based on medical advice.

Koenig has previously claimed that the City declined to promote Koenig.  See See 2015 Koenig CHRO Aff. ¶ 23.  Because Koenig has not offered any evidence, other than his own suspicion, that this failure to promote related to disability or retaliation, a reasonable jury could not find evidence of pretext from this failure to promote.  Thus, based on the evidence before this court, a reasonable jury could not find evidence of pretext based on the City's previous treatment of Koenig.

### 2.   Temporal Proximity

Koenig also asserts temporal proximity.  See Pl.'s Mem. at 11–12.  Temporal proximity between a protected activity and an adverse employment action may, in addition to supporting a prima facie case, see Treglia, 313 F.3d at 720, also help show pretext for retaliation, see Zann Kwan, 737 F.3d at 847.  That said, "temporal proximity alone is not enough to establish pretext in this Circuit."  Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 254 (2d Cir. 2014); see also El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).  Even temporal proximity that was sufficient at the prima facie stage may be insufficient to show pretext at the summary judgment stage.  See El Sayed, 627 F.3d at 933.  Thus, a court in this Circuit has granted summary judgment for an employer in an ADA retaliation case because temporal proximity, while sufficient for the prima facie case, was nonetheless insufficient to show pretext.  See Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 263 (S.D.N.Y. 2015).  The Second Circuit has recognized a genuine dispute of material fact as to pretext, however, when temporal proximity was "combined with" the employer's "inconsistent and contradictory

explanations for the" adverse employment action.  <u>Zann Kwan</u>, 737 F.3d at 845.

Here, evidence exists from which a reasonable jury could conclude that the investigation occurred during Koenig's ongoing CHRO disability discrimination case against the City:  At the time of the internal investigation, Koenig told investigators that he was "currently in litigation" for disability discrimination.  <u>See</u> Koenig Tr. at 7.  Thus a reasonable jury could find that temporal proximity existed.  As discussed below, however, the record before the court lacks any evidence from which a reasonable jury could find that the City gave inconsistent or contradictory explanations for investigating and suspending Koenig.  Nor does the record before the court contain other evidence from which a reasonable jury could find pretext.  Temporal proximity thus is legally insufficient to show pretext here.

### 3.      Inconsistent Explanations

Koenig implies that the City gave inconsistent explanations for investigating and suspending him.  <u>See</u> Pl.'s Mem. at 12–13.  Koenig argues that the City "offers alternate reasons for" this adverse employment action.  <u>See id.</u> at 12.  The court is aware, however, of only one reason given by the City: the allegation that Koenig made an inappropriate comment at work, which was both racial and sexual.  <u>See</u> Def.'s Mem. at 3, 10; Esserman's Aff. ¶ 3; Nabel's Aff. ¶ 7; Investigation Rep. at 6.  The court finds no evidence in the record of any other reason given for the adverse employment action.

Koenig attempts to show an inconsistency by arguing that the accounts of Koenig's alleged inappropriate comment given to investigators by two City employees, Sgt. John Wolcheski ("Wolcheski") and Karizma Schloss ("Schloss"), "are at odds with one another," <u>see</u> Pl.'s Mem. at 12.  Differences between witnesses' statements to

internal investigators, however, do not amount to inconsistent explanations by the City for its actions.  Furthermore, the court notes that the supposed differences in the witnesses' statements relate only to what occurred before and after Koenig allegedly made the statement, rather than to the statement itself.

Koenig argues that Wolcheski remembered Koenig walking while he spoke, but Schloss remembered Koenig standing still before he spoke.  See id. at 12–13.  Koenig also argues that Wolcheski remembered the conversation continuing after Koenig's comment, while Schloss remembered Koenig leaving after the comment.  See id. at 13. Koenig has not highlighted material differences in Wolcheski's and Schloss's accounts, however.  Wolcheski stated that Koenig "walked over towards us . . . and he made a comment."  See Wolcheski Tr. at 9.  Schloss stated that, "Koenig stepped up to the counter," where she and Wolcheski were talking, waited for a "lull in" their conversation, and then made the comment.  See Schloss Interview Transcript ("Schloss Tr.") (in Doc. No. 77-7 at 4–11) at 7.  Both accounts are consistent with Koenig walking toward Wolcheski and Schloss and then making the comment, and thus a reasonable jury could not conclude that these aspects of the statements are at odds.  Schloss stated that, after the comment, she "was just trying to make light of it . . . and I don't even remember exactly what I said to him . . . and I said something to Koenig that made him walk away."  See Schloss Tr. at 9.  Wolcheski stated that, after the comment, the conversation returned to ordinary topics until Wolcheski eventually "walked away from" Schloss.  See Wolcheski Tr. at 9.   Both accounts are consistent with the conversation returning to normal topics, Schloss making a comment that encouraged Koenig to walk away, and then Wolcheski walking away too, and thus a reasonable jury could not

conclude that these aspects of the statements are at odds.

Even if a reasonable jury could find differences in Wolcheski's and Schloss's descriptions of the circumstances surrounding Koenig's alleged comment, these differences would not represent an inconsistency in the City's account of why it investigated and suspended Koenig.  Even if the City had received two radically different accounts of the circumstances surrounding Koenig's alleged inappropriate comment, the City was free to take action based on the allegation of an inappropriate comment.

4.      Koenig's Denial

Koenig points out that he denied making the alleged inappropriate comment. See Pl.'s Mem. at 14; see also Koenig Tr. at 6–8 (denying making the comment). Koenig argues that his denial creates a "dispute of material fact."  See Pl.'s Mem. at 14. The court disagrees, because the issue of whether or not Koenig made the alleged comment is not material.  Even assuming the City erred in concluding that Koenig made the comment, the City's error does not constitute pretext for discrimination.  As a court in this Circuit has explained,

> the question is not whether the employer reached a correct conclusion in attributing fault to the plaintiff, but whether the employer made a good-faith business determination.  In a discrimination case we are decidedly not interested in the truth of the allegations against plaintiff.  We are interested in what motivated the employer.  Even assuming defendants were wrong in their belief that plaintiff had engaged in [ ] misconduct, what is significant is that they based their decision to [carry out an adverse employment action against] plaintiff on that belief, and not on his [protected class]. Therefore, in the absence of evidence undermining [the employer's] assertion that it believed in good faith that [the employee's] conduct merited discipline . . . , or of any other evidence of pretext or discriminatory intent, [the employer] is

22

> entitled to summary judgment. . . . [T]he appropriate inquiry is
> whether the employer had a good faith reason to believe
> plaintiff had engaged in misconduct, and [whether] such
> misconduct was in fact the reason for [the adverse
> employment action].

Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009)

(citations, internal quotation marks, brackets, and ellipses omitted).  "An incorrect

conclusion, while unfortunate for [the employee], does not constitute [ ] discrimination."

Mincey v. Univ. of Rochester, 262 F. App'x 319, 322 (2d Cir. 2008).  Koenig has not

come forward with any evidence on which a reasonable jury could conclude that the

City made anything but a good faith determination.

                    5.          Other Types of Evidence

        The record contains no evidence from  which a reasonable jury could find that

employees outside the protected class who engaged in acts similar to Koenig's were

nonetheless not suspended.  There is no evidence of the City's reaction to Koenig's civil

rights activities, namely, filing CHRO complaints and federal lawsuits.  There is only

evidence that Koenig speculated that the CHRO complaint might have caused the City

to investigate him.  See Koenig Tr. at 7.  The record contains no evidence as to the

City's general policy and practice with respect to employees with disabilities or

employees who have filed discrimination complaints.  Koenig has failed to point to any

evidence from which a reasonable jury could find pretext.  Because the City has offered

evidence of a non-discriminatory rationale and Koenig has failed to offer evidence of

pretext, Koenig's claims cannot survive summary judgment.

**V.    CONCLUSION**

        For the foregoing reasons, there are no genuine issues of material fact with

respect to any of Koenig's claims and the City is entitled to judgment as a matter of law on all counts.  The City's Motion for Summary Judgment (Doc. No. 77) is **GRANTED**, and the case is closed.

      **SO ORDERED.**

      Dated this 10th day of November, 2016, at New Haven, Connecticut.


                      /s/ Janet C. Hall_____
                      Janet C. Hall
                      United States District Judge